**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE: Bair Hugger Forced Air Warming Products Liability Litigation | MDL No. 15-md-02666-JNE-DTS |
| This Document Relates to the Following Cases:<br><br>*Cook*, 17-cv-1115<br>*Zirretta*, 25-cv-1681<br>*Ramirez*, 17-cv-4976<br>*Patton*, 25-cv-1520 | **DEFENDANTS' COMBINED REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS AND RESPONSE TO PLAINTIFFS' MOTIONS FOR LEAVE TO AMEND** |

## INTRODUCTION

Plaintiffs Christopher Cook, Charles Zirretta, Raul Ramirez, and Cynthia Patton erroneously contend that their lawsuits were timely filed based on a strained interpretation of the Texas discovery rule. That rule does not apply to claims like Plaintiffs' involving injuries that are neither inherently undiscoverable nor objectively verifiable. Plaintiffs further argue that the doctrine of fraudulent concealment should toll the limitations period and save their untimely claims, and they request permission to amend their complaints to add specific allegations of fraudulent concealment. Each Plaintiff filed a Proposed Amended Complaint ("PAC") along with their Motion to Amend. However, the PACs demonstrate that granting leave to amend would be futile in these cases because: (1) the PACs fail to adequately plead fraudulent

concealment with particularity as required by Federal Rule of Civil Procedure 9(b); and (2) even if fraudulent concealment were properly pled, as this Court has previously held, accrual of the statute of limitation is tolled only until the onset of infection, when a plaintiff could reasonably discover their claims.[1] Because the PACs clearly show that Plaintiffs were diagnosed with an infection more than four years before filing suit, any attempt to amend would be futile and their claims are untimely as a matter of law.

Accordingly, Defendants 3M Company and Arizant Healthcare Inc.'s (collectively, "3M") Motion for Judgment on the Pleadings ("MJOP") should be granted, and Plaintiffs' individual Motions for Leave to Amend Complaint (Cook, 17-cv-1115 Dkt. 10; Zirretta, 25-cv-1681 Dkt. 7; Ramirez, 17-cv-4976 Dkt. 8; Patton, 25-cv-1520 Dkt. 9, hereinafter "Motions to Amend") should be denied.

## ARGUMENT

### I. The Discovery Rule Does Not Apply to Plaintiffs' Claims.

As Plaintiffs acknowledge, the Texas discovery rule is "a very limited exception" to the general rule that a cause of action accrues upon occurrence of the injury, and it applies "***only*** when the nature of the plaintiff's injury is ***both***

---

[1] *See Skinner v. 3M Company, et al.*, No. 17-cv-2149, Dkt. 98 (Sept. 12, 2025); *Pelican v. 3M Company, et al.*, No. 23-cv-1818, Dkt. 136 (Sept. 12, 2025); *Jones v. 3M Company, et al.*, No. 23-cv-1425, Dkt. 103 (Sept. 12, 2025).

inherently undiscoverable and objectively verifiable." *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001) (emphasis added); (*see also* Opp. at 5-6). Relying primarily on *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 834 (Tex. 2018), Plaintiffs contend that Texas applies a discovery rule where the injury ***and*** the fact that the injury was caused by the wrongful act of another are both inherently undiscoverable and objectively verifiable. (*See* Opp. at 5-7.) But *Schlumberger* does not establish that, and that is not the correct interpretation of Texas law.

### A. Plaintiffs' Injuries Are Not "Inherently Undiscoverable" as a Matter of Law.

*Schlumberger* involved a plaintiff who was burned by caustic chemicals while working on an oil well and developed cancer four months later. 544 S.W.3d at 831-32. He sued the defendant more than two years after the injury, but less than two years after the cancer diagnosis, and the Supreme Court of Texas found that the discovery rule did not apply and that his claims were untimely. *Id.* at 832. In doing so, the *Schlumberger* court explained that "[t]he discovery rule delays accrual until the plaintiff knew or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury." *Id.* at 834. The court did not address the inherently undiscoverable and objectively verifiable requirements—which were not at issue in the case because the plaintiff suffered a "known, acute injury"—but instead stated:

"[W]hether the discovery rule applies turns on whether the injured person is aware that she has an injury and that it was likely caused by the wrongful acts of another." *Id.* Plaintiffs overemphasize the importance of this sentence, which does not alter the Texas discovery rule but merely restates the test for determining whether it applies, which depends upon: (1) whether the injured person is aware that they have an injury (i.e., whether the injury is inherently undiscoverable); and (2) whether the injury was likely caused by the wrongful act of another (i.e., whether it is objectively verifiable). The *Schlumberger* court reasoned that because the plaintiff knew immediately that he had been burned, there was no reason to apply the discovery rule or the related latent occupational disease doctrine, even though he did not develop cancer until months after the burn. Specifically, application of the discovery rule "does not turn on whether the injured person knows the exact identity of the tortfeasor or all of the ways in which the tortfeasor was at fault in causing the injury. Nor does it turn on when the full effects of the injury became known or developed. In this case, [plaintiff] knew [at the time of his initial burns that] he was injured by the fluids and that he had not been provided safety equipment to protect him from coming into contact with them." *Id.* at 834-35.

The same result is required here, as the discovery rule does not apply to Plaintiffs' claims. Plaintiffs' injuries—like the injuries at issue in *Schlumberger*—were not inherently undiscoverable, and therefore there is no

need to resort to application of the discovery rule to determine when their causes of action accrued. Plaintiffs' alleged injuries—the onset of a joint infection—were discoverable, and in fact were explicitly discovered when the Plaintiffs' joint infections were diagnosed. Whether an injury is "inherently undiscoverable" is not dependent upon whether a plaintiff knew that the injury was caused by a specific wrongful act. Instead, "[a]n injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex. 1996). Put differently, before the Court can apply the Texas discovery rule, it must determine as a matter of law that a plaintiff's injury is not "the type of injury that generally is discoverable by the exercise of reasonable diligence."[2]

---

[2] Plaintiffs' contention that judgment on the pleadings is inappropriate because the application of the discovery rule involves questions of fact that should be decided by a jury is without merit. Whether an injury is inherently undiscoverable is a question of law, which must be decided "on a categorical basis because such an approach brings predictability and consistency to the jurisprudence." *Wagner & Brown, Ltd.*, 58 S.W.3d at 735; *see also Sandt v. Energy Maint. Servs. Grp. I, LLC*, 534 S.W.3d 626, 639 (Tex. App. 2017) ("Whether an injury is inherently undiscoverable is legal question, which we decide on a categorical basis."). The broader question of whether the discovery rule applies in a given context is also a question of law. *E.g.*, *Steel v. Rhone Poulenc, Inc.*, 962 S.W.2d 613, 618 (Tex. App. 1997), *aff'd*, 997 S.W.2d 217 (Tex. 1999). Even inquiries regarding whether a plaintiff's reasonable diligence would have uncovered a wrong can be determined as a matter of law. *E.g.*, *United Healthcare Servs., Inc. v. First St. Hosp. LP*, 570 S.W.3d 323, 337 (Tex. App. 2018). Here, where the necessary facts were pled in the Plaintiffs' Complaints, the Court can determine as a matter of law that Plaintiffs' claims are untimely and that the discovery rule does not apply.

*Wagner & Brown, Ltd.*, 58 S.W.3d at 735. As the Supreme Court of Texas has recognized, a prime example of inherently undiscoverable injuries are latent occupational diseases, which "often do not manifest themselves for two or three decades following exposure to the hazardous substance." *Childs v. Haussecker*, 974 S.W.2d 31, 38 (Tex. 1998).

Plaintiffs' suggestion that their PJIs are inherently undiscoverable is entirely illogical. Infections are generally discoverable by the exercise of reasonable diligence because as a general matter they cause symptoms that require medical treatment. Indeed, each of the Plaintiffs were diagnosed with infections and treated for their PJIs within a short period after their index surgeries. (*See* MJOP Ex. B, Cook Compl. ¶¶ 6-8 (index surgery in April 2007, revision procedures in August and October of 2007); MJOP Ex. C, Zirretta Compl. ¶¶ 7-9 (index surgery in March 2014, treatment for infection the same month); MJOP Ex. D, Ramirez Compl. ¶¶ 7-9 (index surgery January 2009, first of multiple treatments in October 2009); MJOP Ex. E, Patton Compl. ¶¶ 7-9 (index surgery January 2016, treatment procedures June 2016).) As such, the injuries Plaintiffs allege are categorically dissimilar from latent occupational diseases and are not "inherently undiscoverable" as a matter of law. *See McGowan v. S. Methodist Univ.*, 715 F. Supp. 3d 937, 948 (N.D. Tex. 2024) (finding that injuries were not inherently undiscoverable where plaintiffs "discovered their hip injuries at the time of their occurrence"), *aff'd*

*sub nom. Clouse v. S. Methodist Univ.*, 2025 WL 2427755 (5th Cir. Aug. 22, 2025). The Court could end its inquiry here, because the discovery rule cannot apply to cases involving injuries that are not inherently undiscoverable. *See Wagner & Brown, Ltd.*, 58 S.W.3d at 734. That is essentially where the inquiry in *Schlumberger* ended.

**B. Plaintiffs' Injuries Are Also Not "Objectively Verifiable" For Purposes of the Discovery Rule.**

However, the Texas discovery rule also does not apply in this case because the "objectively verifiable" element is not satisfied. *See id.* As the Supreme Court of Texas has explained, the purpose of requiring an injury to be both inherently undiscoverable and objectively verifiable before applying the discovery rule is to "balance the conflicting policies in statutes of limitations: the benefits of precluding stale or spurious claims versus the risks of precluding meritorious claims that happen to fall outside an arbitrarily set period." *S.V.*, 933 S.W.2d at 6. The rule accomplishes this purpose by creating a very limited set of circumstances in which a plaintiff can pursue old claims. *See id.* One of those limits is that the injury must be "objectively verifiable" meaning that both the presence of the injury (here, the PJI) and the fact that the injury was caused by a tort (here, that the PJI was caused by the use of the allegedly defective Bair Hugger system) must be demonstrated by objective physical evidence. *See Robinson v. Weaver*, 550 S.W.2d 18, 21 (Tex. 1977)

(requiring "physical evidence which in-and-of-itself establishes the negligence of some person").

This is in contrast to claims in which the existence or cause of an injury are not readily apparent but instead must be demonstrated through expert testimony. In *Robinson*, for example, the court explained that certain types of personal injury cases (such as where a foreign object was left in a patient's body) are straightforward and can be proved with physical evidence (i.e., the existence of the object in the patient's body) whereas others (such as medical malpractice or misdiagnosis) involve more complex causation questions that require expert testimony and often involve competing experts with differing opinions as to negligence. *Robinson*, 550 S.W.2d at 21-22. The court determined, as a matter of policy, that the discovery rule should only apply to those straightforward cases because extending the rule to cover claims that are "subject to proof only by expert hindsight" would undermine "the primary purpose" of the statute of limitations—to prevent the litigation of stale and fraudulent claims. *Id.* at 22.

Contrary to Plaintiffs' assertion, nothing in *Robinson* limits its reasoning to cases involving medical misdiagnosis, as opposed to other sorts of claims that require expert medical testimony. In fact, the Supreme Court of Texas has since reaffirmed that, as a matter of policy against permitting the litigation of stale claims, "the bar of limitations cannot be lowered for no other reason than

a swearing match between parties over facts and between experts over opinions." *S.V.*, 933 S.W.2d at 15. To apply the discovery rule, "the evidence must rise to a higher level of certainty than the preponderance of the evidence for liability." *McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, 241 F. Supp. 3d 737, 770 (N.D. Tex. 2017) (internal quotation and citation omitted).

These cases are plainly not the sort in which Texas courts would lower the statute of limitations bar by applying the discovery rule. Surgical infections have myriad potential causes, many of which are inherent risks of surgery and not tortious or wrongful acts. *See Gareis v. 3M Co.*, 9 F.4th 812, 817 (8th Cir. 2021) (recognizing that "many different ways" a person can get an infection, including bacteria from the patient's own skin). As a matter of law, the injuries alleged by Plaintiffs are not straightforward and their cause could not be proved by objective physical evidence. *Robinson*, 550 S.W.2d at 21-22. Accordingly, the injures are not "objectively verifiable" for purposes of the discovery rule, and the discovery rule does not apply.[3]

---

[3] Contrary to Plaintiffs' suggestion, the fact that their injuries are not "objectively verifiable" for purposes of the discovery rule is not at odds with the fact that, had Plaintiffs conducted a reasonable investigation during the limitations period, they could have discovered a theorized connection between their injuries and use of the Bair Hugger system. Whether the cause of their injuries can be proved by objective evidence versus subjective expert testimony is a wholly different inquiry from the question of whether Plaintiffs could have discovered within the limitations period that a Bair Hugger system was used during their surgeries and whether there was any basis to connect that use to their alleged injuries.

Plaintiffs do not dispute that, where the discovery rule does not apply, the statute of limitations begins to run on the date of injury. (*See* Opp. at 5.) As such, Plaintiffs causes of action accrued, and the statute of limitations began to run, at the onset of their alleged infections. Cook's lawsuit was filed approximately ten years after his claims accrued. (MJOP Ex. B, Cook Compl. ¶¶ 6-8). For Zirretta, more than 11 years passed. (MJOP Ex. C, Zirretta Compl. ¶¶ 7-9). For Ramirez, more than six years, and for Patton, more than eight. (MJOP Ex. D, Ramirez Compl. ¶¶ 7-9; MJOP Ex. E, Patton Compl. ¶¶ 7-9). Plaintiffs' personal injury, fraud, and contract claims are therefore untimely as a matter of law and should be dismissed.

## II. Even if the Discovery Rule Applied as Plaintiffs Suggest, Their Claims Would Be Time-Barred.

Plaintiffs contend that, under the discovery rule, the statute of limitations began to run when they discovered (or should have discovered) that their injury was likely caused by the wrongful acts of another. (*See* Opp. at 5.) Even if that were the rule (which it is not), Plaintiffs' claims would still be time-barred.

This Court has already applied a similar discovery rule and found that the claims of other plaintiffs in this MDL were untimely as a matter of law. Specifically, in *Pelican*, the Court applied Louisiana law, pursuant to which the statute of limitations does not begin to run until a plaintiff has "a

reasonable basis to pursue a claim against a specific defendant." *Pelican v. 3M Company*, et al., No. 23-cv-1818, Dkt. 136 at 5 (Sept. 12, 2025) (quoting *Bruno v. Biomet, Inc.*, 74 F.4th 620, 624 (5th Cir. 2023)). The Court found that the statute of limitations began to run after the first of Pelican's revision surgeries, noting that he "could have requested and reviewed his medical records at any time after he developed a [PJI] and underwent, in June 2016, the first of five revision surgeries. The [statute of limitations] period did not await review of his medical records in August 2022 to start running." *Pelican*, No. 23-cv-1818, Dkt. 136 at 5; *see also Jones v. 3M Company*, et al., No. 23-cv-1425, Dkt. 103 (Sept. 12, 2025) (reaching the same conclusion).

In *Skinner*, the Court applied Iowa law, under which the discovery rule provides that the limitations period does not begin to run until the plaintiff discovers or should have discovered their injury. *Skinner v. 3M Company, et al.*, No. 17-cv-2149, Dkt. 98 at 4 (Sept. 12, 2025) (quoting *Rivas v. Brownell*, 18 N.W.3d 211, 221 (Iowa 2025)). The Court reasoned:

> At any time after he was diagnosed with a [PJI] in March 2012, [Skinner] could have requested and reviewed his medical records, and he could have sought medical and legal assistance to discover the Bair Hugger's alleged defects and alleged dangers. He did no such investigation in the years immediately following his infection and resulting surgeries. The limitation period did not await review of his medical records in June 2016 to start running.

*Skinner*, No. 17-cv-2149, Dkt. 98 at 6-7.

Even if Plaintiffs are correct that the Texas discovery rule—like the Louisiana discovery rule—requires knowledge that an injury was caused by the wrongful act of another, the Court has already determined that such knowledge exists upon diagnosis and treatment for a PJI. Like the Plaintiffs in *Pelican*, *Jones*, and *Skinner*, Plaintiffs in these cases could have requested and reviewed their medical records at any time after being diagnosed with a PJI, and could have obtained medical and legal assistance to discover the alleged connection between those PJIs and use of the Bair Hugger system. Plaintiffs' claims are therefore untimely, even if the discovery rule applies as they suggest.[4]

---

[4] Plaintiffs rely on *In Re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19MD2885, 2021 WL 8533255 (N.D. Fla. Nov. 29, 2021), but that case does not compel a different result. That case is a non-binding federal district court interpretation of Texas law, and for the reasons described above, is incorrect. In any event, the injuries at issue in the 3M Combat Arms Earplug MDL were fundamentally different than the injuries at issue in this case. Plaintiffs in that MDL alleged that earplugs loosened "imperceptibly" while in use, which reduced their effectiveness and over time resulted in hearing damage. *See id.*, 2021 WL 8533255 at *3. That is in stark contrast to the injuries alleged by Plaintiffs in this case, which are alleged to be the result of a single, documented use of the Bair Hugger system and which manifested into symptomatic infections shortly thereafter. Given these significant factual differences, the Court need not look to another MDL for guidance about how the discovery rule may apply when it has already determined for itself how the rule applies to similarly situated Plaintiffs in this litigation.

## III. Plaintiffs DTPA Claims are Also Time-Barred and Fail Separately on the Merits.

Plaintiffs explain that they are not pursuing breach of warranty claims under Tex. Bus. & Com. Code Ann. § 2.725, and instead are pursuing warranty claims solely under the DTPA. (*See* Opp. at 12.)[5] Regardless, any such claims are time-barred and additionally fail on the merits.

Plaintiffs' DTPA claims are subject to a two-year statute of limitations with a statutory discovery rule. *See* Tex. Bus. & Com. Code Ann. § 17.565 ("All actions brought under this subchapter must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice."). For the reasons discussed above, if Plaintiffs had exercised reasonable diligence, they could have discovered their claims after being diagnosed with a PJI. As such, their DTPA claims are untimely based on the same analysis that applies to their personal injury claims.

[5] To the extent Plaintiffs' PACs purport to assert claims for breach of express warranty and breach of implied warranty that are separate from their DTPA counts, those claims are improper and should be dismissed based on Plaintiffs' statements in the Opposition conceding that those claims are untimely and effectively abandoning any such claims.

Further, Plaintiffs' claims fail on the merits because they did not adequately plead detrimental reliance. Plaintiffs do not dispute that they failed to plead detrimental reliance, which is an essential element of any DTPA claim based on false, misleading, or deceptive acts or practices. (Opp. at 13.) Instead, they seek leave to amend their Complaints to add specific allegations of reliance to support their DTPA claims based on 3M's alleged false, misleading, or deceptive acts or practices. (Opp. at 13.) For the reasons outlined below, Plaintiffs' Motions for Leave to Amend should be denied. But in any event, Plaintiffs' PACs do not contain allegations of reliance that meet the heightened pleading requirements of Rule 9(b). *See, e.g.*, *Franklin v. Apple Inc.*, 569 F. Supp. 3d 465, 478 (E.D. Tex. 2021) (DTPA claims must be pled with particularity under Rule 9(b)). Plaintiffs make conclusory allegations of reliance. (*See* Cook PAC ¶ 238 ("Plaintiff and the medical community relied to their detriment upon Defendants' misrepresentations and omissions in determining which patient warming device to use."); Zirretta PAC ¶ 238 (same); Ramirez PAC ¶ 243 (same); Patton PAC ¶ 238 (same).) But these conclusory allegations are insufficient to plead reliance with particularity, as they do not address what specific representations Plaintiffs (or their doctors) heard or observed, when or how, or why those specific representations induced alleged reliance. *See Franklin*, 569 F. Supp. 3d at 478–79 ("Rule 9(b) requires allegations of the particulars of time, place, and contents of the false

representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.”). These claims therefore are inadequately pled and fail.

## IV. 3M’s MJOP Is Neither Procedurally Improper Nor Premature.

Plaintiffs’ assertion that 3M’s MJOP is an “attempt to circumvent” this Court’s pretrial orders is unavailing. (*See* Opp. at 15-16). While Plaintiffs note that PTO 1 stays individual discovery, this has no bearing on the MJOP, which is decided solely on the pleadings and requires no discovery. Regarding the dispositive motion schedule in PTO 22, Plaintiffs misinterpret the order. PTO 22 sets deadlines for general causation summary judgment motions and bellwether case-specific summary judgment motions, but neither deadline applies here because the MJOP does not fall into either category. Further, no Plaintiffs have previously advocated for this interpretation of PTO 22, even though the Court has established protocols to address claims that are facially barred by the statute of limitations and has expressly contemplated motion practice for such claims. (*See* 3/29/2019 Categorization Order, MDL Dkt. 1875; (establishing a protocol for identifying cases that should be dismissed as untimely); 5/17/2019 Revised Categorization Order, MDL Dkt. 1922 (revising the protocol)). As Plaintiffs acknowledge, their cases “ha[ve] no scheduling order,” (Opp. at 17), and therefore there is no basis to argue that the MJOP is untimely.

Moreover, PTO 22 allows for modifications to its schedule "upon a showing of good cause as required by Local Rule 16.3." (PTO 22 at 1). The good cause standard under Local Rule 16.3 is consistent with the good cause standard applicable under Federal Rule of Civil Procedure 16(b). *See IBEW Loc. 98 Pension Fund v. Best Buy Co.*, 326 F.R.D. 513, 522 (D. Minn. 2018). Determining whether good cause exists is within the Court's discretion based upon consideration of the diligence of the party seeking to modify the scheduling order and any other relevant factors. *Shank v. Carleton Coll.*, 329 F.R.D. 610, 614 (D. Minn. 2019). Here, good cause justifies allowing the MJOP and similar motions, because the MDL inventory is littered with cases that are facially untimely, and pleading-based motion practice is an efficient means to identify and dismiss such cases. Denying 3M's MJOP at this juncture would only waste the resources of the Court, the parties, and transferor courts. In short, even were there a procedural defect regarding the MJOP's timing (and there is not), good cause exists to excuse any technical deficiency and adjudicate the MJOP on its merits.

Equally unpersuasive are Plaintiffs' arguments that the Master Complaint and Short Form Complaints are merely "procedural devices" or that plaintiffs in remanded cases have the unfettered right to amend their pleadings and conduct discovery. (*See* Opp. at 16-17). By filing their Motions to Amend and PACs, Plaintiffs have nullified any argument that adjudicating

the MJOP unfairly deprives them of an opportunity to amend their pleadings. Furthermore, as discussed more fully below, the Motions to Amend and PACs confirm that Plaintiffs' claims are untimely as a matter of law and ***cannot be amended*** to state a plausible claim against 3M, further undermining any suggestion that the MJOP is procedurally improper or premature.

Lastly, Plaintiffs' purported concern about judicial efficiency—*i.e.*, that adjudicating the MJOP will "open the floodgates" for additional motion practice (Opp. at 18-19)—is a strawman that lacks legal foundation and does not justify denying 3M the relief to which it is legally entitled. Plaintiffs elected to file hundreds (if not thousands) of cases that are facially time-barred, and Plaintiffs continue to pursue those meritless cases with impunity, unfairly burdening both the Court and Defendants. Judicial efficiency is best supported by litigants voluntarily dismissing cases that are facially time-barred (or, even better, never filing them in the first place). Until that approach is adopted, Defendants may file good-faith motions that will efficiently dispose of cases that have no chance of success.

If Plaintiffs will not voluntarily screen their inventories and cull meritless cases from the MDL docket, Plaintiffs leave Defendants with little choice but to initiate motions practice.

## V. Plaintiffs Should Be Denied Leave to Amend Because Any Amendment Would Be Futile.

A court may deny leave to amend a complaint where amendment would be futile. *E.g.*, *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018). "An amendment is futile if the amended claim 'could not withstand a motion to dismiss under Rule 12(b)(6).'" *Id.* (quoting *Silva v. Metropolitan Life Ins. Co.*, 762 F.3d 711, 719 (8th Cir. 2014)). This includes where the amended claim would be barred by the applicable statute of limitations. *See Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889, 897 (8th Cir. 2015) ("A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) as barred by a statute of limitations if the complaint itself shows that the claim is time-barred."). "[A] party is not entitled to amend a complaint without making a showing that such an amendment would be able to save an otherwise meritless claim." *Plymouth Cnty., Iowa v. Merscorp, Inc.*, 774 F.3d 1155, 1160 (8th Cir. 2014).

Here, Plaintiffs' PACs demonstrate that amendment is futile for two reasons: (1) Plaintiffs' proposed allegations are insufficient to plead fraudulent concealment for purposes of tolling the statute of limitations; and (2) even if Plaintiffs could take advantage of tolling under the fraudulent concealment doctrine, any tolling would cease upon the date Plaintiff was diagnosed with an infection. Because the PACs clearly show that Plaintiffs were diagnosed

with an infection more than four years before filing suit, the proposed amendments are futile.

### A. Plaintiffs Fail to Adequately Plead Fraudulent Concealment.

A plaintiff seeking to toll the statute of limitations on the basis of fraudulent concealment must plead the circumstances of fraudulent concealment with particularity. *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011). In addition to pleading the "who, what, when, where, and how" of the alleged fraudulent concealment, the plaintiff must also allege when and how they discovered the alleged fraud. *Id.* at 880-81 ("By failing to allege when and how he discovered [defendant's] alleged fraud, [plaintiff] has failed to meet his burden of sufficiently pleading that the doctrine of fraudulent concealment saves his otherwise time-barred claims.").

As Plaintiffs acknowledge, under Texas law, fraudulent concealment requires a plaintiff to establish: "(1) the existence of the underlying tort, (2) the defendant's knowledge of the tort, (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable reliance on the deception." (Opp. at 20 (quoting *Dyer v. Innuria*, No. 14-24-00396-CV, 2025 WL 2080903, at *7 (Tex. App. July 24, 2025)). These elements are specific to each individual plaintiff. *See, e.g.*, *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 67 (Tex. 2011) (fraudulent concealment requires "that 'the defendant actually knew ***the***

***plaintiff*** was in fact wronged, and concealed that fact to deceive ***the plaintiff***") (emphasis added) (quoting *Earle v. Ratliff*, 998 S.W.2d 882, 888 (Tex. 1999)).

Here, the allegations in the PACs are insufficient to plead fraudulent concealment and do not do so with the requisite particularity. Plaintiffs each present essentially identical allegations, which accuse 3M of knowing and failing to warn against certain alleged risks associated with the Bair Hugger system and of making certain representations "to the public, the medical community, and the FDA." (*See generally* Cook PAC ¶¶ 118-162; Zirretta PAC ¶¶ 118-162; Ramirez PAC ¶¶ 119-161; Patton PAC ¶¶ 118-162.) They each make the same or similar conclusory allegations that "[t]hese affirmative acts by Defendant 3M were designed to, and did in fact, obstruct plaintiff, even in the exercise of due diligence, from discovering the facts necessary to file suit within the applicable statute of limitations," (Cook PAC ¶ 161; Zirretta PAC ¶ 161; Patton PAC ¶ 161; *see also* Ramirez PAC ¶ 161 ("3M by its false public statements and actions, fraudulently concealed the dangers associated with the use of the Bair Hugger. The fraudulent statements were relied upon, preventing Plaintiff from learning that the Bair Hugger was the cause of Plaintiff's infection. Accordingly, the Plaintiff did not discover and could not have discovered, despite using reasonable diligence, that the Bair Hugger cause Plaintiff's infections until shortly before suit was filed."). But no Plaintiff

makes any specific allegation demonstrating: (1) that any particular statement was directed to or heard by Plaintiffs (or their medical providers), including the who, what, where, when, and how of any such statement; (2) that 3M knew of Plaintiffs' existence, of their injuries, or that a Bair Hugger system was used in their individual surgeries; (3) that 3M took any specific action designed to deceive any particular Plaintiff (or their particular medical providers); or (4) (with respect to Zirretta and Patton) how each Plaintiff learned of the alleged fraud and discovered their cause of action. These facts are essential to pleading fraudulent concealment, and without them, no Plaintiff has established that fraudulent concealment applies to their specific claims. *See Summerhill*, 637 F.3d at 880-81; *Dyer*, 2025 WL 2080903, at *7; *BP Am. Prod. Co.*, 342 S.W.3d at 67.

In addition, in support of their allegations of fraudulent concealment, Plaintiffs rely on testimony and other statements purportedly made by 3M representatives during the pendency of this MDL, as well as publications that post-date the formation of the MDL. (*See, e.g.*, Cook PAC ¶¶ 128-30, 139-40, 143, 145 (discussing MDL testimony); *Id.* ¶ 130, 147-52 (discussing 2018 publication); *Id.* ¶ 153 (discussing 2019 publication); Zirretta PAC ¶¶ 128-31, 139-40, 143, 145, 149 (discussing MDL testimony): *Id.* ¶ 133, 147 (discussing 2018 publication); *Id.* ¶ 153 (discussing 2019 publication); Ramirez PAC ¶¶ 129-32, 139, 143, 145, 149 (discussing MDL testimony); *Id.* ¶ 143, 147

(discussing 2018 publication); *Id.* ¶ 153 (discussing 2019 publication); Patton PAC ¶¶ 128-31, 139-40, 143, 145, 149 (discussing MDL testimony); *Id.* ¶ 133, 147 (discussing 2018 publication); *Id.* ¶ 153 (discussing 2019 publication).)

For Cook, who allegedly "discovered that the Bair Hugger was capable of causing an infection around August 2015 after his wife saw a television commercial," (Cook PAC ¶ 164), the statements post-dating his discovery cannot possibly operate to toll the statute of limitations. *Rubalcaba v. Kaestner*, 981 S.W.2d 369, 376 (Tex. App. 1998) ("Fraudulent concealment ceases to be a defense to limitations when a party learns of 'facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action.'") (quoting *Borderlon v. Peck*, 661 S.W.2d 907, 909 (Tex. 1983)). Similarly, Ramirez allegedly "discovered the Bair Hugger was capable of causing an infection" for the first time in "approximately January 2016 after seeing a television advertisement," (Ramirez PAC ¶ 166), so allegations of later representations are irrelevant to his fraudulent concealment claim.

For all Plaintiffs, alleged representations post-dating the formation of the Bair Hugger MDL on December 11, 2015, are irrelevant to the extent that the existence of the MDL itself had already effectively terminated the possibility that 3M could fraudulently conceal a cause of action. *See, e.g., City of Bos. v. Express Scripts, Inc.*, 765 F. Supp. 3d 31, 42 (D. Mass. 2025) (holding

fraudulent concealment did not toll limitations periods where other plaintiffs filed similar complaints against defendants in a "highly publicized MDL"), *appeal filed*, No. 25-1258 (1st. Cir. Mar. 26, 2025).

For all of these reasons, Plaintiffs fail to adequately plead fraudulent concealment in their PACs. As a result, fraudulent concealment does not operate to save their untimely claims, and the proposed amendments would be futile.

### B. Any Alleged Tolling of the Statute of Limitations Ended When Plaintiffs Were First Diagnosed with PJIs.

Tolling based on "fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action." *Jenkins v. Tahmahkera*, 151 F.4th 739, 750 (5th Cir. 2025) (quoting *Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 623 (Tex. 2011)).

Based on the same analysis this Court applied in *Pelican*, *Jones*, and *Skinner*, the onset of Plaintiffs' PJIs was sufficient to cease any potential tolling based on fraudulent concealment. At that time, Plaintiffs could have discovered their causes of action through reasonable diligence because they could have requested their medical records and obtained medical and legal assistance. Plaintiffs were diagnosed with infections in 2007, 2009, 2014, and

2016, yet they each waited more than six years to file their original complaints. Plaintiffs have not alleged facts to establish that they acted with due diligence, nor do they explain how any alleged fraudulent concealment prevented them from timely filing their complaints. Any tolling based on fraudulent concealment would have ended when Plaintiffs were diagnosed with their infections. For each Plaintiff, that occurred well outside the limitations period. As a result, Plaintiffs' claims are untimely as a matter of law, and any attempt to amend their complaints would be futile.

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims are time-barred as a matter of law, and no amendment can change that result. Accordingly, 3M's Motion for Judgment on the Pleadings should be granted and Plaintiffs' Motions for Leave to Amend should be denied.

Respectfully submitted,

Date: November 19, 2025

*s/John P. Mandler*
John P. Mandler (#0194438)
M. Joseph Winebrenner (#0387889)
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-7000
john.mandler@faegredrinker.com
joe.winebrenner@faegredrinker.com

Benjamin W. Hulse (MN #0390952)
Norton Rose Fulbright US LLP
60 South Sixth Street, Suite 3100
Minneapolis, MN 55402
Phone: (612) 321-2800
ben.hulse@nortonrosefulbright.com

***Counsel for Defendants 3M Company and Arizant Healthcare Inc.***